THE STATE OF OHIO, APPELLEE, *v.* HENRY, APPELLANT.

(No. WD-86-30—Decided June 5, 1987.)

*Betty D. Montgomery,* prosecuting attorney, for appellee.

*John M. Dunipace,* for appellant.

RESNICK, J. This cause is before the court on appeal from the April 18, 1986 judgment of the Wood County Court of Common Pleas. Defendant-appellant, Patrick Henry (hereinafter "appellant"), was indicted by the Wood County Grand Jury on November 8, 1985 on one count of kidnapping, one count of rape committed as a principal offender, one count of rape as aider and abettor of Lamont Walker, and three counts of rape as aider and abettor of Troy Hill.

The prosecutor filed a motion for joinder and the trial court granted the motion on February 13, 1986. A joint jury trial was held for appellant and co-

defendants Walker and Hill. Appellant was found guilty of all five counts of rape and the count of kidnapping. Judgment was entered accordingly and appellant was sentenced on April 18, 1986. Appellant filed a timely notice of appeal and asserts the following assignments of error:

"First Assignment of Error

"The trial court committed reversible error when it compelled defendant to stand trial jointly with co-defendants Hill and Walker.

"Second Assignment of Error

"The trial court committed reversible error when it permitted the victim of the alleged offenses to attempt an in-court identification of defendant.

"Third Assignment of Error

"The trial court committed reversible error when it failed to order the prosecuting attorney to deliver to defendant the written or recorded statements, written summaries of oral statements, or recorded grand jury testimony of Floyd Boatman, an [sic] co-defendant.

"Fourth Assignment of Error

"The trial court committed reversible error when it failed to order the prosecuting attorney to deliver to the court for in camera inspection all of the written or recorded statements of the alleged victim, as required by Crim. R. (B)(1)(g) [sic, 16(B)(1)(g)].

"Fifth Assignment of Error

"The trial court erred in the sentence imposed upon defendant.

"A. Defendant received multiple sentence[s] for allied offenses of similar import, committed with a single animus.

"B. The minimum term of imprisonment in the sentence imposed upon defendant exceeded the maximum permitted by R.C. 2929.41(E)(2).

"C. The sentence of the trial court was not based upon a consideration of factors required to be considered by the court pursuant to R.C. 2929.12.

"Sixth Assigment of Error

"The cumulative effect of the trial court's errors deprived defendant of a fair trial."

The evidence as presented at trial showed that appellant met with a number of other people at the Studio One parking lot in Toledo, Ohio, on the evening of October 25, 1985. Several of the people there decided to attend a party in Bowling Green, Ohio. Appellant rode to Bowling Green in Hill's automobile with Hill, Walker and Greg Files. Upon arriving in Bowling Green, appellant and several others stood outside the party talking. Between midnight and 1:00 a.m., appellant, Hill, Walker and Floyd Boatman left the party. They went to a parking lot in Bowling Green where they abducted a Bowling Green State University student. The victim was placed in the automobile and driven from Bowling Green to Toledo on country roads. She was raped repeatedly by at least three of the men in the automobile during that time. After the rapes were completed, she was returned to Bowling Green. Within moments of being released she was found by Bowling Green State University police officers. A bulletin was immediately dispatched to all police officers which described the automobile used in the abduction and rapes and which stated that four black men were in the automobile. The bulletin was subsequently revised to indicate that only three black men were in the automobile.

An automobile matching the dispatched description was located at a Bowling Green gas station within moments of the initial dispatch. The automobile contained three black men. The officer who located the automobile followed it onto I-75 prior to stopping it. After the officer approached the automobile, the driver sped away and a high speed chase ensued. The chase involved speeds in excess of one hundred and ten miles per hour and at least six

police units. The police were not able to stop the vehicle and it was later located in Toledo.

Appellant asserts in his first assignment of error that the trial court erred in granting the prosecution's motion to try appellant jointly with co-defendants Hill and Walker. The basis for this argument is the contention that the joint trial violated the United States Supreme Court's holding in *Bruton* v. *United States* (1968), 391 U.S. 123. The Supreme Court held in *Bruton* that:

"* * * the admission of a confession of a codefendant who did not take the stand deprived the defendant of his rights under the Sixth Amendment Confrontation Clause, when that confession implicated the defendant. * * *" *Schneble* v. *Florida* (1972), 405 U.S. 427, 429-430.

It appears from a review of the record that statements of co-defendants Hill and Walker may have been admitted in violation of *Bruton, supra.* For example, Hill made statements to the investigator for the Wood County Prosecutor's office and to FBI agents in Alabama that he went to a party in Bowling Green on the night of October 25 with appellant, Walker and Greg Files. Hill further stated that appellant, Walker, Boatman and he left the party at approximately midnight to get beer. Additionally, Hill admitted that he was the driver of the vehicle involved in the high speed chase. These statements may be in violation of *Bruton, supra*; however, reversal is not necessarily mandated.

Both the United States and Ohio Supreme Courts have held that *Bruton* violations do not automatically require reversal of a conviction. In *Harrington* v. *California* (1969), 395 U.S. 250, the United States Supreme Court held that even though evidence obtained from co-defendants' confessions was admitted, the evidence from sources other than the confessions was so over-

whelming that any violation of *Bruton* was harmless beyond a reasonable doubt. *Id.* at 254. The United States Supreme Court relied on *Harrington* and reached a similar conclusion in *Schneble, supra:*

"The mere finding of a violation of the *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Id.* at 430.

In *State* v. *Moritz* (1980), 63 Ohio St. 2d 150, 17 O.O. 3d 92, 407 N.E. 2d 1268, the Ohio Supreme Court quoted the above provision from *Schneble* and determined that sufficient independent evidence of guilt existed to render the admission of statements of co-defendants harmless beyond a reasonable doubt. *Id.* at 156, 17 O.O. 3d at 95-96, 407 N.E. 2d at 1272. These cases clearly establish that if evidence of guilt from sources other than statements by Hill or Walker is so overwhelming that appellant's guilt is clear beyond a reasonable doubt, the use of the statements constitutes harmless error. A review of the evidence presented demonstrates that this is in fact the case.

Floyd Boatman testified that he was present during much of the time that the victim was being raped. He testified that appellant got out of the automobile and placed a sheet over the victim's head as she approached and threw her into the automobile. He also testified that appellant held the victim down while Walker raped her and then Walker held her down while appellant raped her.

Testing was conducted and evidence was presented at trial that demonstrated that appellant's blood

type was consistent with the stains found in the automobile and on the victim's clothing. Further, appellant's blood type was consistent with that in the semen found in the victim's vagina.

Appellant himself made a statement to the FBI agents that he, Hill, Walker and Files attended the party in Bowling Green. He also corroborated Hill's statement regarding the high speed chase.

Appellant's girl friend, Kellie Hutchens, testified that appellant, Hill and Walker were at the Studio One parking lot and that they stated that they were going to Bowling Green. She further testified that appellant had called her to pick them up in the early morning of October 26, 1985.

Numerous witnesses testified that they saw appellant in Bowling Green with Walker and Hill and saw them leave the party in Hill's automobile sometime between midnight and 1:00 a.m. These witnesses include Terry Boles, Anthony Crutchfield, Marvin Parker, R. C. Smith, Jr., Greg Files and Kenneth Boatman. The statements of these witnesses as well as the statement of Floyd Boatman placed appellant in Hill's automobile on the night of the kidnapping and rapes.

Overwhelming evidence was presented at trial tying Hill's automobile to the kidnapping and rapes. This evidence included the description and identification by the victim of unique characteristics of the automobile and objects in the automobile. A key fact is that there was no liner inside the roof of the vehicle in which the victim was raped. There was no roof liner inside Hill's vehicle. The victim also identified such unique objects as a cover on the steering wheel and a watch attached to the dashboard of the automobile. An additional identifying factor is that the automobile in which the victim was raped had water problems. Hill's automobile also had water problems.

There were hairs and stains found in Hill's automobile consistent with the victim's hair and blood type. At 4:09 a.m. on October 26, Bowling Green State University police officers stopped the victim. A description of the automobile and the description of the occupants as four black males was immediately dispatched over the police radio. At 4:14 a.m., the report was corrected to state that only three men were in the automobile. A vehicle matching the description which the victim gave was located at 4:16 a.m. It was determined through a registration check that the automobile was owned by Troy Hill.

Based upon the evidence presented at trial it is apparent that the requirements set forth in *Schneble, supra,* and *Moritz, supra,* have been satisfied. The statements by codefendants were not direct admissions of appellant's guilt; rather, they were cumulative to other evidence which placed appellant in the location at the time the rapes and kidnapping were committed. When this fact is balanced against the evidence of guilt presented from other sources it is apparent that the "* * * evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." *Schneble, supra,* at 430. Therefore, appellant's first assignment of error is found not well-taken.

In appellant's second assignment of error he contends that the trial court erred in permitting the victim to attempt an in-court identification. When asked to identify appellant in court, the victim was unable to do so. All that she could say was that he "looked familiar." The authorities appellant provides for his contention address the suggestiveness or reliability

of an in-court identification. In this case, the victim was not able to identify appellant, thus, no in-court identification exists. As a result, appellant's second assignment of error is without merit and found not well-taken.

Appellant asserts in his third assignment of error that the trial court erred in failing to require that the prosecutor turn statements of Floyd Boatman over to appellant. Appellant relies on Crim. R. 16(B)(1)(a)(i), (ii), and (iii) as support. Crim. R. 16(B)(1)(a)(i) through (iii) require disclosure of statements of co-defendants.

Appellant's argument must fail because Crim. R. 16(B)(1)(a)(i) through (iii) are not applicable. Floyd Boatman cannot be a co-defendant as required under Crim. R. 16(B)(1)(a)(i) through (iii) because he is not a defendant. The grand jury heard evidence regarding Boatman's involvement in the kidnapping and rapes but did not indict him; instead, it returned a no bill. The Ohio Supreme Court has stated in *State* v. *Lane* (1976), 49 Ohio St. 2d 77, 85, 3 O.O. 3d 45, 49, 358 N.E. 2d 1081, 1088, vacated on other grounds (1978), 438 U.S. 911:

"* * * Where a prosecution witness is not a co-defendant, a trial court does not err in refusing to compel discovery of prior statements and grand jury testimony given by said witness. * * *"

Accordingly, since Boatman was not a co-defendant, appellant was not entitled to his statements. As a result, appellant's third assignment of error is found not well-taken.

The fourth assignment of error raised by appellant states that the trial court erred in failing to order that the prosecutor deliver statements of the victim for *in camera* inspection. Crim. R. 16(B)(1)(g) provides:

"(g) In camera inspection of witness' statement. Upon completion of a witness' direct examination at trial, the court on motion of the defendant shall conduct an in camera inspection of the witness' written or recorded statement with the defense attorney and prosecuting attorney present and participating, to determine the existence of inconsistencies, if any, between the testimony of such witness and the prior statement.

"If the court determines that inconsistencies exist, the statement shall be given to the defense attorney for use in cross-examination of the witness as to the inconsistencies.

"If the court determines that inconsistencies do not exist the statement shall not be given to the defense attorney and he shall not be permitted to cross-examine or comment thereon.

"Whenever the defense attorney is not given the entire statement, it shall be preserved in the records of the court to be made available to the appellate court in the event of an appeal."

Appellant requested the victim's statements after she testified at trial. The prosecution responded that no statements existed and that the only material available was the prosecutor's notes which constituted work product. The trial court determined that there were no discoverable statements and did not conduct an *in camera* inspection.

Pursuant to Crim. R. 16(B)(1)(g), only "statements" are discoverable. This court has previously defined "statement":

"The term 'statement' as used in Crim. R. 16(B)(1)(g) includes a written statement signed or otherwise adopted or approved by the witness; a recording of the witness' words or a transcription thereof; and a substantially verbatim recital of the witness' statement written in a continuous narrative form." *State* v. *Johnson* (1978), 62 Ohio App. 2d 31, 16 O.O. 3d 74, 403

N.E. 2d 1003, paragraph one of the syllabus.

*Johnson, supra,* adopted the test set forth in *State* v. *Houston* (Iowa 1973), 209 N.W. 2d 42, 46:

"‘The true test is whether the statement is the witness' own, rather than the product of the investigator's selections, interpretations and interpolations. It must be shown, unless there is direct evidence the witness prepared, signed or adopted the statement, that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so.' " *Johnson, supra,* at 37, 16 O.O. 3d at 78, 403 N.E. 2d at 1007-1008.

The term "statement" was further defined in *State* v. *Cummings* (1985), 23 Ohio App. 3d 40, 23 OBR 84, 491 N.E. 2d 354, paragraph one of the syllabus:

"* * * Before a writing or recording can be considered a 'statement' of the witness, pursuant to Crim. R. 16(B)(1)(g), it must be shown that either the witness prepared, signed or adopted the statement, or that it minimally is a continuous, narrative statement made by the witness and recorded verbatim, or nearly so."

*State* v. *Washington* (1978), 56 Ohio App. 2d 129, 10 O.O. 3d 150, 381 N.E. 2d 1142, involved a factual situation similar to the case *sub judice.* In *Washington, supra,* a police officer took notes during an interview with a witness. The court found that the notes did not constitute a "written or recorded statement." *Id.* at 132, 10 O.O. 3d at 151-152, 381 N.E. 2d at 1144-1145. The court determined that:

"* * * The word 'written' in this context does not refer to notes made by a detective talking to a witness during an investigation. The word 'written' refers to a writing made by a witness or by someone else at that witness' direction. The word 're-corded' also cannot refer to such notes as it refers only to a mechanical reproduction of a statement by tapes or the like; otherwise, it would be a writing, and a distinction between 'written' and 'recorded' would not be necessary if the word 'recorded' was merely another way of referring to a writing." *Id.* at 132-133, 10 O.O. 3d at 152, 381 N.E. 2d at 1145.

No review of the disputed documents was conducted by the trial court. The better practice for a trial court to follow when there is a dispute over whether a document is discoverable is for the trial court to review the document to determine if it qualifies as a "statement." If it does so qualify, the trial court should then conduct an *in camera* inspection pursuant to Crim. R. 16(B)(1)(g). The statement should be disclosed if there are inconsistencies between the statement and the testimony given in court.

Even though no review was conducted below, the documents were sealed and made part of the record on appeal. Our review of the documents discloses that they are in fact the work product of the prosecutor. The documents consist only of notes taken by the prosecutor, which were not reviewed, adopted or signed by the witness. Further, the witness' narrative was not recorded verbatim. Therefore, any error that may have been committed by the trial court in failing to inspect the documents and determine if they were discoverable is harmless error. As a result, appellant's fourth assignment of error is found not well-taken.

Appellant asserts in his fifth assignment of error that the trial court erred in the sentence imposed on him. Three separate reasons were presented to support the assertion that the sentence was improper. The first reason presented is that appellant cannot be sentenced for both the rapes

and the kidnapping. Appellant argues that rape and kidnapping are allied offenses of similar import committed with a single animus and, therefore, only one sentence can be imposed.

The Ohio Supreme Court has set forth the standard for determining whether kidnapping and another offense are subject to separate convictions:

"In establishing whether kidnapping and another offense of the same or similar kind are committed with a separate animus as to each pursuant to R.C. 2941.25(B), this court adopts the following guidelines:

"(a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;

"(b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions." *State* v. *Logan* (1979), 60 Ohio St. 2d 126, 14 O.O. 3d 373, 397 N.E. 2d 1345, at the syllabus.

When the *Logan* standard is applied to the facts in the instant case, it is apparent that a separate animus does in fact exist and, therefore, separate convictions are proper. First, the restraint was prolonged. The victim was abducted at approximately 1:30 a.m. and was not released until approximately 4:04 a.m. Second, the confinement was secretive. The abductors kept the victim's head down so that she would not be seen in the automobile. Moreover, when a police officer approached the automobile the victim was threatened and told not to let the officer know that she was in the automobile. Third, the movement involved was substantial. The victim was abducted in Bowling Green, driven to Toledo and then returned to Bowling Green. Fourth, there was a substantial increase in risk of harm to the victim. The farther the victim was removed from Bowling Green and the longer she was restrained, the less likely it was that she would be returned safely. The victim was taken on country roads and could have been killed or abandoned without encountering assistance nearby. Since the victim was taken in an automobile and driven a substantial distance, she was subjected to a risk of injury from the operation of the motor vehicle which was separate and distinct from the injury she was exposed to from the rapes.

Appellant's second reason why the sentencing was improper is that it exceeded the aggregate minimum permitted by R.C. 2929.41(E)(2), now (E)(3). The Ohio Supreme Court has determined that:

"* * * where a trial court's sentence exceeds the minimum established for consecutive terms, such judgment is not the basis of a reversible error, as the terms of former R.C. 2929.41(E)(2), now (E)(3), are self-executing, automatically operating to limit the aggregate minimum sentencing term to fifteen years. * * *" *State* v. *White* (1985), 18 Ohio St. 3d 340, 341, 18 OBR 381, 383, 481 N.E. 2d 596, 597.

Any error committed by the trial court in sentencing appellant in excess of the aggregate minimum permitted is automatically corrected and, therefore, cannot be raised on appeal.

Appellant asserts as his third reason why the sentencing was improper that the trial court did not base

its decision on consideration of the factors which are required to be considered pursuant to R.C. 2929.12. The trial court has broad discretion in imposing a sentence which is within the statutory limits. *State* v. *Cassidy* (1984), 21 Ohio App. 3d 100, 102, 21 OBR 107, 108-109, 487 N.E. 2d 322, 323. Since the trial court is given discretion, the burden is placed upon appellant to show that the trial court did not consider the necessary factors:

"In determining the sentence, the trial court is required to consider the factors set forth by these statutes, but the provisions do not control the court's discretion in imposing imprisonment. This court cannot invade the province of the trial court by setting aside a sentence so imposed if there is no clear showing that the trial court abused its discretion. *Toledo* v. *Reasonover* (1965), 5 Ohio St. 2d 22." *Columbus* v. *Bee* (1979), 67 Ohio App. 2d 65, 77, 21 O.O. 3d 371, 379, 425 N.E. 2d 409, 418.

Further, unless there is a showing to the contrary, it is presumed that the trial court considered the standards of the applicable statute in the sentencing process. *State* v. *Baker* (1984), 25 Ohio Misc. 2d 11, 25 OBR 232, 495 N.E. 2d 976, paragraph two of the syllabus.

Appellant also raises the argument that he was not provided a presentence investigation prior to sentencing. Such a pretrial investigation is not required. Crim. R. 32.2(A) provides:

"* * * In felony cases the court shall * * * order a presentence investigation and report before granting probation."

Pursuant to Crim. R. 32.2(A), a presentence investigation is only required if probation is to be granted. Therefore, a presentence investigation is not required in this case.

Based on the foregoing discussion, appellant's fifth assignment of error is found not well-taken.

Appellant asserts in his sixth assignment of error that the cumulative effect of the trial court's errors deprived him of a fair trial. The law is well-established that a defendant has a right to a fair trial, but not a perfect trial. *Schneble, supra,* at 432; *Burton, supra,* at 135; *Lutwak* v. *United States* (1953), 344 U.S. 604, 619. Although errors were made in the course of the trial, they were not such as to deprive appellant of a fair trial. Accordingly, appellant's sixth assignment of error is found not well-taken.

On consideration whereof, the court finds that the appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Wood County Court of Common Pleas is affirmed. This cause is remanded to said court for execution of judgment. It is ordered that appellant pay court costs of this appeal.

*Judgment affirmed.*

HANDWORK, P.J., and GLASSER, J., concur.