The STATE of Ohio, Appellee,

v.

WERNET, Appellant.

[Cite as *State v. Wernet* (1996), 108 Ohio App.3d 737.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–95–031.

Decided Jan. 26, 1996.

Anthony G. Pizza, Lucas County Prosecuting Attorney, *Thomas N. Tomczak* and *Craig T. Pearson,* Assistant Prosecuting Attorneys, for appellee.

*Samuel Z. Kaplan,* for appellant.

---

*Per Curiam.*

This is an appeal from an arson conviction and subsequent imposition of sentence. Because we conclude that the trial court erred in excluding certain evidence, we reverse.

A homeless camp existed in a wooded area of a section of Toledo known as the Buckeye Basin. A sofa and a loveseat were arranged near a campfire. Twenty or so feet away someone had built a makeshift structure of plywood and canvas that the occupants of this site called a "hooch."

On May 23, 1994, there were four homeless men at the camp: Steven Day, Bill Wainscott, Dan Croley and Dan Wojciechowski. The four had been drinking all day, consuming numerous forty–ounce bottles of malt liquor and several bottles of beer.

At some point in the evening, Day crawled into the hooch and went to sleep. He was awakened sometime later by a hammer-wielding Croley, who ordered him to collect wood for the fire. Later a dispute broke out when Wainscott and Croley accused Day of stealing a beer from the communal cooler. When this

argument escalated into Wainscott's striking Day, Day fled the camp to the North Erie Street home of appellant, Marie Wernet. There, Day found Marie Wernet and several others, all of whom had been drinking.

Croley and Wainscott followed Day to appellant's home, where the two attempted to enter but were stopped by appellant. During this confrontation Wainscott struck appellant. Following this, Wainscott and Croley returned to the campsite, and later fell asleep on the couch and the loveseat near the campfire. Wojciechowski was in the hooch.

Early in the morning of May 24, Wainscott and Croley awoke to find the hooch ablaze and Wojciechowski attempting to extinguish fire on his clothing. The hooch was completely destroyed. Wojciechowski, with the help of the other two, eventually put out the fire on his clothing. In the process, he was severely burned.

Croley and Wainscott hiked a half-mile to a warehouse and had a security guard summon help. A Toledo fire rescue paramedic unit responded. Wojciechowski was taken out of the camp by helicopter and flown to a nearby hospital where he was admitted into the burn unit. He died the next day.

Initially, no investigation into Wojciechowski's death was initiated because Wainscott and Croley told the paramedics that Wojciechowski had fallen asleep while smoking and set fire to the hooch himself.[1] However, an arson investigation was begun three days later at the instigation of a relative of Wojciechowski. By this time, though, any evidence of wrongdoing at the campsite which had not been consumed in the fire had been washed away by rain. The only physical evidence arson investigators uncovered was the charred remains of what may have been a lighter fluid can at the campsite.

Interviews of those present at appellant's house the night of the fire disclosed that Steve Day had said he "ought to go down and burn the * * * hooch" because of his treatment at the hands of Wainscott and Croley. The investigation then centered on Day who, following multiple interviews, eventually confessed to setting the fire. Day was arrested and charged with arson and involuntary manslaughter. Day later recanted his confession, explaining that he was tired and just wanted to get out of there when he made the statement implicating himself.

With Day in jail, police also became aware of statements made by appellant. These statements indicated that she started the fire at the hooch. A couple reported that they had been involved in a drunken altercation with appellant at

---

1. At trial there was conflicting evidence as to whether Wojciechowski himself had voiced this theory to paramedics.

her home when she grabbed a can of charcoal lighter fluid and threatened to "burn your * * * ass like I burned him." Another witness recounted that appellant, who had been drinking, told that witness that Steve Day did not deserve to be in jail because it was she, appellant, who had set the fire.

The state eventually dismissed charges against Steve Day. Appellant was indicted on one count of murder and one count of aggravated arson. She pled not guilty and the matter proceeded to jury trial.

At trial, the only witnesses against appellant were those who had heard her make statements implicating herself in the fire that killed Wojciechowski. The defense called Steve Day, who asserted his Fifth Amendment right to avoid self-incrimination. On the assertion of the right, the trial court declared Day unavailable and permitted introduction of his confession into evidence. The trial court refused, however, to allow testimony concerning Day's poor performance on a polygraph examination.

Following deliberation, the jury acquitted appellant of the murder charge, but found her guilty of aggravated arson. The trial court sentenced her to an indefinite term of incarceration of from seven to twenty-five years. Appellant now appeals her conviction and sentence, setting forth the following two assignments of error:

"First Assignment of Error:

"The trial court unduly restricted appellant Marie Wernet's right of confrontation in violation of Article I, Section 10 of the Ohio Constitution and the Sixth Amendment to the United States Constitution, and her Fourteenth Amendment Due Process right to present exculpatory evidence, by excluding evidence of another person's state of mind at the time of that person's confession to the same offense.

"Second Assignment of Error:

"The verdict of guilty to the charge of aggravated arson was contrary to the manifest weight of the evidence."

I

In her second assignment of error, appellant challenges the weight of the evidence upon which her conviction rests. Appellant properly points out that there was no physical evidence of her involvement in the fire and no witness who placed her at the campsite the night the hooch burned. The only inculpatory evidence against appellant were her own statements to others, statements which were uncontestedly made by appellant when she was, to one degree or another, intoxicated. Appellant suggests that these statements had little effect on their

listeners, since none of these witnesses came directly forward with the damning declarations.[2]

■ Appellant argues that balanced against this faint proof is the detailed confession of Steve Day, told and repeated by him following several *Miranda* warnings. Appellant submits that the details of Day's confession were corroborated by other witnesses. If there is evidence of any crime at all, appellant asserts, it is that Steve Day set the fire that killed Dan Wojciechowski. Therefore, according to appellant, the jury must have lost its way or reached a compromise verdict when it found appellant guilty of arson.

"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 259–260, 574 N.E.2d 492, 494, paragraph two of the syllabus.

In the present matter, the jury had before it the testimony of two witnesses who recounted statements of the defendant which could reasonably be construed as confessions to setting the fire that killed Dan Wojciechowski. Therefore, if believed by the jury, that evidence is sufficient to sustain a conviction for arson. Accordingly, appellant's second assignment of error is found not well taken.

## II

In her first assignment of error, appellant complains that she was prejudiced by two evidentiary rulings the trial court made concerning the circumstances surrounding Steve Day's confession. The trial court refused to permit testimony that, immediately prior to his confession, police told Day that he had failed a polygraph examination. Additionally, although the court allowed testimony that prior to Day's statement, prosecutors informed him of the various penalties for homicide offenses, it refused admission of evidence concerning the specific penalties.[3]

■ Within the bounds of the rules of evidence, a defendant seeking to exonerate herself or himself should be afforded a meaningful opportunity to

---

2. Police had learned of these statements only through the retelling of the incidents to third parties who later contacted authorities.

3. The court did permit Day's arresting officer to testify that he had told the suspect that if the fire had been purposely set to kill someone, the death penalty might be involved.

present a complete defense at trial. *California v. Trombetta* (1984), 467 U.S. 479, 485, 104 S.Ct. 2528, 2532, 81 L.Ed.2d 413, 419–420. Nevertheless, the admission or exclusion of evidence is within the sound discretion of the court and will not be reversed absent an abuse of that discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 182, 31 OBR 375, 382–383, 510 N.E.2d 343, 349–350. An abuse of discretion connotes an attitude by the court that is arbitrary, unreasonable or unconscionable. *State v. Long* (1978), 53 Ohio St.2d 91, 98, 7 O.O.3d 178, 181–182, 372 N.E.2d 804, 808–809.

 Concerning the court's refusal to allow appellant to present, in detail, the penalties for arson and homicide which had been explained to Steve Day prior to his confession, we find no abuse of discretion. Appellant was able to submit into evidence testimony that Day had been informed of the various penalties and chose to make a statement even after having received that information. To explain these penalties in greater detail would have accomplished nothing more than to inform the jury of the range of penalties to which appellant might be subjected should she be convicted of the same offenses. The admission into evidence of the possible penalties a criminal defendant faces is improper. *State v. Abboud* (1983), 13 Ohio App.3d 62, 63, 13 OBR 66, 67–68, 468 N.E.2d 155, 156–157.

 The issue of testimony concerning Steve Day's polygraph, however, is more problematic. As appellant points out, it was not the result of the polygraph test that she sought to introduce. Instead, appellant intended to use the fact that Day had been told that (1) he had failed a polygraph examination, yet (2) the test could not be used against him in court.[4] Appellant intended to use this evidence to refute Day's stated reason why he confessed and to argue that Steve Day, rather than protesting the validity of the polygraph's results or ignoring them (since they could not be used against him), chose instead to give a statement in which he admitted to setting the fire at the hooch. This, appellant would have suggested to the jury, was an act inconsistent with the innocence which Steve Day later claimed. All of this would have supported appellant's trial argument that Day was more likely the arsonist than appellant.

Any evidence which has a tendency to make the existence of any fact that is of consequence more or less probable is relevant, Evid.R. 401, and is admissible at trial. Evid.R. 403. Relevant evidence may be excluded from admission at trial, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issue, or misleading the jury. Evid.R. 403(B).

---

4. The issue of the polygraph arose in a motion *in limine* prior to trial and later was properly raised at trial during appellant's examination of Day's arresting officer. The officer did testify that Day stated during his recantation of the confession that the reason he confessed was that he, Day, was tired and "wanted to get out of there."

If Steve Day believed he had performed poorly on a polygraph examination, yet knew it could not be used against him, one reasonable inference would be that this knowledge would have made him less likely to confess to a crime he did not commit. Whether or not Steve Day committed the arson is a matter of great consequence in appellant's defense. What Steve Day was told about his polygraph results is relevant to this case. The trial court premised its exclusion of this relevant evidence on *State v. McAfee* (Dec. 26, 1991), Guernsey App. No. CA–91–20, unreported, 1991 WL 302359, which the court concluded necessitated this result.

McAfee was accused of sexually abusing a child. McAfee's pretrial motion *in limine* to exclude at trial any mention of his polygraph test was granted. During the trial, McAfee implied that the child's mother may have been responsible for the abuse and suggested that police had not seriously investigated her. On redirect, and in response to a prosecution inquiry, the investigating officer testified that the police had conducted an investigation of the mother and administered to her a polygraph examination. McAfee objected when the state then asked if, following the results of this polygraph examination, there was any reason to suspect the mother. The objection was sustained in part. The trial court permitted the state to ask if there was any evidence which made the mother a suspect, deleting any reference to the polygraph. The officer responded that there was none.

On appeal, McAfee argued that another Fifth District appeals case, *State v. Rohl* (Feb. 21, 1990), Guernsey App. No. 89–CA–21, unreported, 1990 WL 21412, necessitated a *sua sponte* mistrial upon the mention of a polygraph test administered to an alleged sexual assault victim in the trial of the person she accused. The *McAfee* court rejected this argument, noting, among other distinctions between the cases, that the polygraph reference in *Rohl* was to an alleged victim, "whereas in the instant case the reference was to a polygraph of a possible suspect other than the defendant." *State v. McAfee, supra.*

In the present case, the polygraph in question was also that of a suspect other than the defendant. Clearly then, *McAfee* did not require the exclusion of the polygraph evidence of which appellant complained. Therefore, the trial court's reliance on *McAfee* to exclude the polygraph testimony was erroneous. Since there appears to be no other rationale by which such evidence should be excluded, we conclude that the trial court erred in its evidentiary ruling.

We must next examine whether this error prejudiced appellant. A review of the case law will demonstrate that generally when, as here, a trial court commits a relatively minor evidentiary error, the error is deemed harmless beyond a reasonable doubt. *State v. Zimmerman* (1985), 18 Ohio St.3d 43, 45, 18

OBR 79, 80–81, 479 N.E.2d 862, 863–864; *State v. Williams* (1983), 6 Ohio St.3d 281, 286, 6 OBR 345, 349–350, 452 N.E.2d 1323, 1330; Crim.R. 52(A). There is, however, a synergistic relationship between the degree of the error and the quantum of other evidence against the defendant when applying a harmless error analysis. Relatively minor trial errors are harmless so long as there is overwhelming evidence of guilt from other sources. See, *e.g., State v. Henry* (1987), 37 Ohio App.3d 3, 523 N.E.2d 877.

In this case, however, we cannot say that there is overwhelming evidence of appellant's guilt. As we mentioned in our discussion of appellant's argument on the manifest weight of the evidence, the only evidence tying appellant to this fire was statements made by her when she was indisputedly intoxicated. Given only this evidence, we cannot conclude that the jury would have convicted appellant had it been privy to the full circumstances concerning Steve Day's confession. We cannot, therefore, find the trial court's error harmless beyond a reasonable doubt. Accordingly, appellant's first assignment of error is found well taken.

On consideration whereof, the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to the court for a new trial. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

MELVIN L. RESNICK, P.J., and SHERCK, J., concur.

GLASSER, J., dissents.