[Cite as *State v. Vargas*, 2014-Ohio-843.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

State of Ohio,                                          :

        Plaintiff-Appellant,                  :

v.                                                     :                    No. 12AP-692
                                                                        (C.P.C. No. 10CR-02-651)
Luis M. Vargas,                                        :

        Defendant-Appellee.                   :                    (REGULAR CALENDAR)

---

D E C I S I O N

Rendered on March 6, 2014

---

*Ron O'Brien,* Prosecuting Attorney, *Steven L. Taylor* and *Catherine M. Russo,* for appellant.

*Yeura R. Venters,* Public Defender, and *John W. Keeling,* for appellee.

---

APPEAL from the Franklin County Court of Common Pleas

CONNOR, J.

{¶ 1} Plaintiff-appellant, State of Ohio ("the State"), appeals from an amended judgment entry of conviction entered in the Franklin County Court of Common Pleas following a resentencing hearing held for defendant-appellee, Luis M. Vargas ("defendant"). Defendant was resentenced as a result of our May 1, 2012 decision reversing and remanding the sentences imposed for his rape and kidnapping offenses due to an improper merger. *State v. Vargas,* 10th Dist. No. 10AP-952 (May 1, 2012). Upon resentencing, we find the trial court failed to analyze the factors set forth in *State v. Logan,* 60 Ohio St.2d 126 (1979), in determining whether the offenses were committed separately or with a separate animus. In conducting this analysis on appeal, we find the

offenses were committed with a separate animus, and the offenses are not subject to merger. Therefore, we reverse and remand for resentencing.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}  Defendant and his co-defendant, Jeffrey J. Rivera ("co-defendant" or "Rivera") were indicted for raping and kidnapping S.K. at knifepoint.  A jury trial commenced on or about August 17, 2010.  On August 25, 2010, the jury returned its verdicts, finding defendant guilty of one count of rape (fellatio), another count of rape (vaginal intercourse), and one count of kidnapping.  His co-defendant, Rivera, was also found guilty of one count of kidnapping and two counts of rape.

{¶ 3}  The original sentencing hearing was held on September 3, 2010.  The State argued against merger of the rape and kidnapping offenses and requested the imposition of consecutive sentences.  Rivera's trial counsel argued the rape offenses should merge with the kidnapping offense.  Trial counsel for defendant also argued for merger and referenced the case of *State v. Hogan*, 10th Dist. No. 09AP-1182, 2010-Ohio-3385, in which this court determined the kidnapping and rape offenses in that case should be merged.  Believing the kidnapping count had to be merged with the rape counts as a matter of law pursuant to *Hogan*, the trial court sentenced defendant to eight years of incarceration on each of the rape counts, ordered the two rape counts to be served consecutively to one another, and "merged" the kidnapping offense with the rapes, but also ordered that count to be served concurrently to the rapes.  Defendant appealed, arguing the convictions were not supported by sufficient evidence and were against the manifest weight of the evidence, as well as due process violations and ineffective assistance of counsel.  The State also filed a cross-appeal, asserting the trial court had erred by purportedly merging the rapes and the kidnapping count through the imposition of concurrent sentences.

{¶ 4}  In our May 1, 2012 decision, we set forth the facts as they were developed pursuant to the testimony presented at trial.   We find the following facts as set forth in our prior decision to be relevant to this appeal:

> S.K. testified that on October 2, 2009, she was visiting her cousin Annice, who lived in an apartment on Brookway Road. Also present at Annice's apartment were S.K.'s two minor children, Annice's boyfriend Shaway and his brother

Deshawn, as well as Annice's female friends, Tanitia ("Nee Nee"), and Marva Johnson. The group watched movies, ate dinner, and played with the kids. Later that night, as it approached the early morning hours of October 3, 2009, S.K. and the other women decided to leave the apartment to get a drink. The four women walked to a nearby Marathon gas station and purchased alcohol and cigarettes. Annice, Nee Nee, and Marva wanted to go to a bar near the gas station, but S.K. decided to go back to the apartment to be with her children. The three other women stood outside the bar and watched S.K. as she crossed the street to return to Annice's apartment.

S.K. testified she was scared about walking back alone, so she called and sent a text message to Deshawn to ask him to meet her halfway, but he did not respond. S.K. then called her friend Chantler Tennant and spoke with him until he ended the call, stating he would call her back. At about the time that call ended, S.K. noticed a black vehicle coming toward her. It drove past her and turned around in a parking lot. She began to walk faster. The car slowed down and someone yelled out the window, asking to talk to her. She responded that she could not talk because she needed to get home. The passenger in the vehicle, who was later identified as Rivera, asked S.K. if she needed a ride home, but she declined his offer. Rivera informed S.K. his name was "Young" and showed her a tattoo on his right arm that said "Young." S.K. provided her first name and kept walking. The passenger asked again if S.K. wanted a ride and when she said no, the vehicle pulled away.

As S.K. was beginning to walk across a field near her Annice's apartment, she noticed the black vehicle again. The passenger asked to talk to her. S.K. said no, but he gestured to her to approach. S.K. testified she stopped walking and spoke to Rivera while maintaining a distance. Rivera then suddenly pulled out his penis and said, "Don't you want this[?]" (Tr. 127.) S.K. said no, but Rivera grabbed her arm and started trying to rub against her. S.K. testified she tried to pull away. Rivera repeatedly told S.K., "You know you want it." (Tr. 128.) S.K. told Rivera she had to go. The driver of the vehicle, later identified as [defendant], exited the vehicle and retrieved a knife from the trunk.

S.K. testified [defendant] and Rivera began speaking to each other in Spanish. [Defendant] gave the knife to Rivera, who ordered S.K. to get into the vehicle. S.K. got into the rear of

the vehicle and sat in the middle. [Defendant] returned to the driver's seat and Rivera got into the rear passenger's seat. Rivera still had his penis exposed. He instructed S.K. to "suck it." (Tr. 136.) S.K. told Rivera she wanted to go home to her children, but he repeatedly insisted she was a "streetwalker" and said, "You know you want it." (Tr. 137.) Rivera advised S.K. to "suck my penis." (Tr. 137.) Fearing for her life, S.K. did what she was told to do and performed fellatio on Rivera at knifepoint for approximately five to ten minutes as [defendant] drove the vehicle.

S.K. testified she noticed the car had stopped near an abandoned building. [Defendant] and Rivera spoke to one another in Spanish. She recognized the word "policia" and noticed a police car driving away. [Defendant] then exited the vehicle and got into the rear of the car on the driver's side. Rivera asked [defendant] if he "want[ed] to get some of this, too?" (Tr. 140.) [Defendant] responded affirmatively. [Defendant] pulled down S.K.'s pants and forced vaginal intercourse with her while she continued to give Rivera oral sex. S.K. described the intercourse as "really, really rough," particularly due to the fact she had recently given birth and her body had not completely healed. (Tr. 274.)

S.K. testified she stopped performing oral sex on Rivera when [defendant] was about to ejaculate because [defendant] wanted S.K. to "suck me off." (Tr. 141.) Rivera advised [defendant] not to ejaculate in S.K because they did not want to leave behind any evidence. S.K. "sucked off" [defendant] while giving Rivera a "hand job" at the same time. (Tr. 142-43.) [Defendant] ejaculated on S.K.'s back but then wiped it off with a cloth he picked up from the floor of the car. After that, [defendant] exited the back seat and returned to the driver's seat and began driving again. As [defendant] drove, S.K. testified she continued to give Rivera oral sex for approximately five or ten minutes until he was about to ejaculate, at which point he ordered her to give him a "hand job" until he ejaculated into a piece of clothing.

At one point during the course of the kidnapping and rape while S.K. was giving Rivera oral sex, Rivera located S.K.'s cell phone and began scrolling through and reading S.K.'s text messages. Rivera read one particular sexting message sent by S.K. to Deshawn out loud to [defendant]. Rivera then commented to S.K., "If you didn't want none, why are you

talking nasty?  You probably had some earlier that day."  (Tr. 219.)

[Defendant] drove the vehicle to another apartment complex in a wooded area.  The men ordered S.K. to wash out her mouth with alcohol by swishing the alcohol around in her mouth and spitting it out in a jug.  They also ordered her to spit some alcohol into her hand and rub it onto her face.

Eventually, the men drove S.K. to the general location of the original kidnapping.  She was pushed out of the vehicle.  S.K. testified the entire event lasted approximately 30 to 40 minutes.  Afterwards, she called Nee Nee's cell phone to get a message to Annice to ask Annice to return to the apartment. When Annice returned home, S.K. informed Annice she had been raped.  Annice called 911 and an officer came to Annice's apartment to take a statement from S.K.

*Vargas* at ¶4-12.

{¶ 5}  On appeal, we affirmed defendant's convictions and overruled all four of his assignments of error.  However, we determined the trial court could not "merge" two counts through the imposition of concurrent sentences, pursuant to *State v. Damron*, 129 Ohio St.3d 86, 2011-Ohio-2268, because "[t]he imposition of concurrent sentences is not the equivalent of merging allied offenses."  *Vargas* at ¶ 95.  We further stated that "*Hogan* does not stand for the proposition that all kidnapping and rape offenses must be merged under all circumstances, since merger is not required where the offenses were committed separately or where there is a separate animus."  *Id.* at ¶ 86.  We also determined it is possible to commit the offenses of rape and kidnapping with the same conduct, and therefore, the offenses are of similar import.  *Id.* at ¶ 91.

{¶ 6}  However, we went on to hold that such a finding required a further determination of whether a separate animus existed for the kidnapping.  "A trial judge, in its analysis of the second step in [*State v.*] *Johnson*, [128 Ohio St.3d 153, 2010-Ohio-6314] could determine a separate animus existed for the kidnapping count under the facts and circumstances in this case, based upon appellant's conduct and the guidelines set forth in Logan, 60 Ohio St.2d at 126, for determining whether a separate animus exists in the context of a kidnapping."  *Id.* at ¶ 91.  We noted that *Logan* stands for the premise that "where the restraint is prolonged, the confinement secretive or the movement substantial

so as to demonstrate a significance independent of the other offense, or where the asportation or restraint subjects the victim to a substantial increase in risk of harm separate from that of the underlying crime, a separate animus exists." *Id.* at ¶ 91. We further found "the trial judge did not consider or analyze this issue pursuant to *Johnson* and/or *Logan*" and instead relied upon *Hogan* to conclude that merger was required. *Id.* at ¶ 91.

{¶ 7} Consequently, we vacated defendant's sentence and remanded this matter "for proper sentencing for the trial court to apply *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, to consider [appellant's] conduct and determine whether a separate animus exists for the two offenses, and to consider all relevant sentencing provisions in R.C. 2929.11 and 2929.12, including consecutive sentences if the court determines the offenses do not merge." *Id.* at ¶ 97.

{¶ 8} At the resentencing hearing, the trial court again determined, over the objection of the prosecutor who was arguing the offenses did not merge pursuant to *Logan*, that the kidnapping offense should merge with the rape offenses. The trial court did not consider the *Logan* factors. Instead, the trial court based its determination on the fact that the jury verdict convicting defendant of the kidnapping offense was premised upon a finding that the defendant had "by force, threat, or deception remove[d] [S.K.] from the place where she was found, and/or restrained [S.K.] for the purpose of engaging in sexual activity with [S.K.] against her will." (R. 130 at 4; Jury Instructions.)

{¶ 9} Believing that it was limited specifically to the jury's finding, the trial court referenced its earlier comments made during the *Vargas* resentencing and stated: "Previously we had had these discussions. The Court had found that the State of Ohio would be forced to elect. In this case, it would be Count 1 versus Count 4 and 5. I had found that the finding of the kidnapping was limited strictly to the sexual activity aspect of it. I did not feel I could exceed upon it. That's why I forced the State to elect." (July 17, 2012, Tr. 6.)

{¶ 10} Consequently, the trial court instructed the prosecutor to elect the charges upon which the State wished to proceed, imposed a sentence of 8 years for each rape conviction, and ran the two sentences consecutively for a total sentence of 16 years.

**II. ASSIGNMENTS OF ERROR**

{¶ 11} The State has filed a timely appeal and has set forth two assignments of error for our review:

> [I.] THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FAILING TO FOLLOW THE MANDATE OF THE APPELLATE COURT ON REMAND.
>
> [II.] THE TRIAL COURT ERRED IN MERGING THE KIDNAPPING COUNT WITH THE TWO RAPE COUNTS FOR SENTENCING PURPOSES.

{¶ 12} Because we find the State's second assignment of error to be dispositive of this appeal, we shall address it first.

## III. STANDARD OF REVIEW

{¶ 13} In reviewing a trial court's determination of whether a defendant's offenses should merge pursuant to the multiple counts statute, the Supreme Court of Ohio has determined a reviewing court should review the trial court's R.C. 2941.25 determination de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, ¶ 1. "Appellate courts apply the law to the facts of individual cases to make a legal determination as to whether R.C. 2941.25 allows multiple convictions. That facts are involved in the analysis does not make the issue a question of fact deserving of deference to a trial court[.]" *Id.* at ¶ 25.

## IV. SECOND ASSIGNMENT OF ERROR—ERROR IN MERGING RAPES AND KIDNAPPING

{¶ 14} In its second assignment of error, the State argues the trial court erred in merging the kidnapping count with the rape counts. Pursuant to the criteria set forth under *Logan*, the State argues the kidnapping does not merge.

{¶ 15} Ohio's multiple counts statute, R.C. 2941.25 reads as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the

> indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶ 16} Thus, R.C. 2941.25 prohibits merger and allows cumulative punishment if the offenses: (1) lack a similar import/are of dissimilar import, (2) were committed separately, or (3) were committed with a separate animus as to each. These three bars to merger are disjunctive. *State v. Bickerstaff*, 10th Ohio St.3d 62 (1984).

{¶ 17} The defendant has the burden of proving at the sentencing hearing that he is entitled to merger pursuant to R.C. 2941.25. *State v. Cochran*, 10th Dist. No. 11AP-408, 2012-Ohio-5899, ¶ 60, citing *State v. Mughni*, 33 Ohio St.3d 65, 67 (1987). A defendant cannot show he is entitled to merger without demonstrating that the offenses result from the "same conduct" and share a "similar import." *Cochran* at ¶ 60. *See also State v. Cooper*, 104 Ohio St.3d 293, 2004-Ohio-6553, ¶ 17.

{¶ 18} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, the Supreme Court of Ohio overruled the abstract analysis it had previously established in *State v. Rance,* 85 Ohio St.3d 632 (1999), for determining whether two offenses constitute allied offenses of similar import subject to merger under R.C. 2941.25. Although there was no majority opinion in *Johnson*, the plurality opinion, as well as the concurring justices, stressed the importance of considering the conduct of the accused in the analysis. *See Johnson* at syllabus, with which all justices concurred ("When determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered. (*State v. Rance* * * * overruled).").

{¶ 19} The *Johnson* plurality opinion set forth a two-part test for determining whether offenses are allied and required to be merged. The first question is whether it is possible to commit one offense and commit the other offense with the same conduct. *Johnson* at ¶ 48. If so, then the offenses are of similar import. If the offenses can be committed by the same conduct, the test requires the court to "determine whether the offenses were committed by the same conduct, i.e., 'a single act, committed with a single state of mind.' " *Id.* at ¶ 49, quoting *State v. Brown*, 119 Ohio St.3d 447, 2008 -Ohio-4569 (Lanzinger, J., dissenting).

{¶ 20} "After *Johnson*, we look to the evidence and, 'if that evidence reveals that the state relied upon the "same conduct" to prove the two offenses, and that the offenses

were committed neither separately nor with a separate animus to each, then the defendant is afforded the protections of R.C. 2941.25, and the trial court errs by imposing separate sentences for the offenses.' " *State v. Drummonds*, 1st Dist. No. C-110011, 2011-Ohio-5915, ¶ 6, quoting *State v. Strong*, 1st Dist. No. C-100484, 2011-Ohi0-4947, ¶ 67.

{¶ 21} More recently, in *Williams*, the Supreme Court sought to further clarify *Johnson*. In discussing its decision in *Johnson*, the court stated: "this court held that in making an allied-offenses determination, a court should not employ an abstract analysis, but instead should consider the statutory elements of each offense in the context of the defendant's conduct." *Williams* at ¶ 20.

{¶ 22} We have previously determined that in some circumstances, it is possible to commit the offenses of rape and kidnapping with the same conduct. *See State v. Worth*, 10th Dist. No. 10AP-1125, 2012-Ohio-666, ¶ 78. The Supreme Court has also previously found kidnapping and rape to be offenses of similar import. *State v. Donald*, 57 Ohio St.2d 73 (1979). Implicit in every forcible rape is a kidnapping and as a consequence, the offenses are allied offenses of similar import. *State v. Powell*, 49 Ohio St.3d 255, 262 (1990). Therefore, because the two offenses are of similar import, an analysis of the defendant's conduct is required here.

{¶ 23} In *Williams*, the Supreme Court reviewed the two-part test for analyzing allied-offense issues set forth in *State v. Blankenship*, 38 Ohio St.3d 116, 117, (1988):

> "In the first step, the elements of the two crimes are compared. If the elements of the offenses correspond to such a degree that the commission of one crime will result in the commission of the other, the crimes are allied offenses of similar import and the court must then proceed to the second step. In the second step, the defendant's *conduct* is reviewed to determine whether the defendant can be convicted of both offenses. If the court finds either that the crimes were committed separately or that there was a separate animus for each crime, the defendant may be convicted of both offenses."

(Emphasis sic.) *Williams* at ¶ 17.

{¶ 24} *In Williams*, the court noted that its analysis regarding an appellate court's review of a trial court's determination as to whether kidnapping and rape were allied offenses was based upon the second *Blankenship* factor (i.e., whether the acts occurred

separately or had a separate animus), not the first *Blankenship* factor analyzed in *Johnson*. *Williams* at ¶ 22. The *Williams* court went on to set forth the guidelines established in *Logan* for determining "whether kidnapping and rape are committed with a separate animus so as to permit separate punishment under R.C. 2941.25(B)." *Williams* at ¶ 23. Thus, it is in conducting the analysis and reviewing the defendant's conduct in the second step under *Blankenship* that the *Logan criteria*, which are still applicable, come into play.

{¶ 25} In determining whether kidnapping and another offense of the same or similar kind (such as rape) were committed with a separate animus, the Supreme Court adopted the following guidelines in *Logan*:

> (a) Where the restraint or movement of the victim is merely incidental to a separate underlying crime, there exists no separate animus sufficient to sustain separate convictions; however, where the restraint is prolonged, the confinement is secretive, or the movement is substantial so as to demonstrate a significance independent of the other offense, there exists a separate animus as to each offense sufficient to support separate convictions;
>
> (b) Where the asportation or restraint of the victim subjects the victim to a substantial increase in risk of harm separate and apart from that involved in the underlying crime, there exists a separate animus as to each offense sufficient to support separate convictions.

*Id.* at syllabus.

{¶ 26} In conducting our analysis, we begin with the application of the *Logan* guidelines to the facts, circumstances, and conduct at issue here. We shall also compare our case and the *Logan* guidelines to the facts, circumstances, and conduct in other cases involving kidnapping and rape offenses, in order to determine whether the offenses were committed with a separate animus or separate conduct.

{¶ 27} S.K. was kidnapped at knifepoint in a parking lot and forced into a vehicle. S.K. testified she was driven around the city for approximately 30 to 40 minutes and taken to several different locations, including an abandoned building and a second apartment complex in a wooded area. During the course of this ride around the city, S.K. was raped four times, with each rape lasting approximately five to ten minutes.

{¶ 28} S.K. was ordered to keep her head down so that she could not attempt to look around in order to familiarize herself with her surroundings. During the time period when the vehicle was parked near an abandoned building, a police car was also in the vicinity. Vargas purposely waited for the police car to leave before he entered the backseat and forced S.K. to submit to intercourse. When the three of them were parked at the apartment complex in a wooded area, the men ordered S.K. to destroy evidence of the rapes by swishing alcohol around in her mouth and spitting it into a jug and by washing her face with alcohol. After she was instructed to use the alcohol to destroy any evidence of the rapes, S.K. was forced back into the vehicle and eventually driven to the general area from which she had been kidnapped.

{¶ 29} These facts demonstrate a confinement that was prolonged and secretive. These facts also demonstrate substantial movement demonstrating a significance independent of, not merely incidental to, the rapes. Furthermore, the asportation of S.K. subjected her to a substantial increase in the risk of harm, separate and apart from that of the rape.

{¶ 30} As stated above, S.K. was confined and restrained for 30 to 40 minutes while the defendants drove her around the city. We believe this constitutes prolonged, long-term restraint. Furthermore, this was not a circumstance where the kidnapping was implicit as part of a forcible rape because her liberty was restrained. S.K. was not merely restrained or held down while the rape occurred; rather, these acts demonstrated substantial movement, as she was physically transported to several locations in the city. Thus, the restraint was not merely incidental to the rapes. *See State v. Smith*, 10th Dist. No. 94APA09-1300 (Apr. 6, 1995) (restraint of the victim was not incidental to the rapes where the restraint was prolonged and the movement was substantial; victim was driven around before, during, and after the rapes and was not released immediately after the rapes); *State v. Wade*, 10th Dist. No. 10AP-159, 2010-Ohio-6395, ¶ 74 ("the kidnapping was not merely incidental to the rape, which lasted five or ten minutes, but also involved prolonged restraint of 20 to 30 minutes") (reversed on other grounds as to sexual offender classification); and *State v. Greathouse*, 2d Dist. No. 21536, 2007-Ohio-2136, ¶ 46 (crimes were committed with a separate animus where detention was prolonged due to defendant driving victim around "for quite some time" before driving to the location

where the rape occurred). *See also State v. Simko*, 71 Ohio St.3d 483 (1994) (animus for kidnapping existed separate from the aggravated murder where victim was restrained and terrorized for approximately one-half hour before being shot in the back as she was fleeing); and *State v. Broom*, 40 Ohio St.3d 277, 290 (1988) ("The restraint and asportation of the victim at knifepoint, in a car, to a location over a mile away can hardly be considered as merely incidental to the rape and murder of the victim.").

{¶ 31} The facts and circumstances here also demonstrate secretive confinement. S.K. was ordered to keep her head down so that she could not attempt to see where they were going. When S.K. and the men were parked in an area with a police car nearby, defendant purposely waited for the police car to leave before forcing intercourse with S.K. so as not to be detected. The men also took S.K. to less trafficked areas, such as the apartment complex near a wooded area and an abandoned building, in order to escape detection. Additionally, the men ordered S.K. to destroy evidence of the rapes by swishing alcohol around in her mouth and spitting it into a jug, and by washing her face with alcohol. These events constitute an environment that was secretive. *See State v. Hayes*, 10th Dist. No. 93AP-868 (Mar. 1, 1994) (a separate animus existed for rape and kidnapping offenses where offender brought the victim to a secretive area—the parking lot—raped her, drove her several miles to a "nicer" location, dragged her out of the car into his abandoned apartment, and raped her in total seclusion); *Smith* (victim was confined in secret as she was driven to a dark alley/street so the offender could have intercourse with her and she was instructed to keep her head down so that she could not see where she was); and *State v. Henry*, 37 Ohio App.3d 3, 9 (6th Dist.1987) (confinement was secretive where abductors kept the victim's head down so she would not be seen in the car; when a police officer approached, she was threatened and ordered not to let the officer know that she was in the car).

{¶ 32} S.K.'s kidnapping involved substantial movement demonstrating a significance independent of the rapes. S.K. was driven around the city for 30 to 40 minutes to locations such as an abandoned building and an apartment complex in a wooded area and back to the general area where she was first kidnapped. This movement was more substantial than that found in *State v. Moore*, 13 Ohio App.3d 226 (10th Dist.1983), a case in which our court found there was sufficient asportation to constitute

separate conduct from the actual commission of the rape itself. In *Moore*, the offender forcibly removed the victim, at knifepoint, from the bus stop and forced her to walk approximately one block to a shed. He then forced her to enter the shed and raped her. We further found the same conduct did not constitute the kidnapping and the rape. *Id.* at 228.

{¶ 33} We also find the asportation of S.K. subjected her to a substantial increase in the risk of harm, separate and apart from that involved in the rape. Continuously driving the victim around the city to different locations increased the chances that she would find it necessary to escape by jumping out of a moving vehicle or that one of the men would push her out of the moving vehicle if she attempted to resist. *See Greathouse* at ¶ 46 (detention posed a substantial increase in risk of harm separate from the rape because the hazard of traveling in a vehicle for a prolonged period of time increased the potential harm), and *Henry* at 9 (there was a substantial increase in risk of harm because the farther the victim was removed from her original location and the longer she was restrained, the less likely it was that she would be returned to safety, particularly when she was taken to isolated areas where she could have been killed or abandoned without any assistance nearby; transporting her in an automobile a substantial distance subjected her to a risk of injury from the operation of the motor vehicle that was separate and distinct from the injury she was exposed to from the rapes).

{¶ 34} In addition, we compare this case to the recently decided case of *State v. Vance*, 10th Dist. No. 11AP-755, 2012-Ohio-2594. In *Vance*, the offender pled guilty to aggravated robbery, kidnapping, and having a weapon while under disability. The trial court determined the offender's convictions for aggravated robbery and kidnapping did not merge under R.C. 2941.25. We applied the *Logan* criteria and affirmed that determination on appeal.

{¶ 35} Specifically, we found the restraint was prolonged and there was a substantial asportation. The victim was robbed of her belongings and transported from the Walgreens to an ATM, where the offender withdrew money from her account. The offender next drove the victim to a drug house and threatened her if she tried to leave. The event lasted approximately one hour and 15 minutes and involved transporting her a significant distance across a section of the city. The kidnapping also subjected the victim

to an increased risk of substantial harm because he left her in a vehicle outside a drug house and refused to let her leave.

{¶ 36} Finally, we take note of the trial court's concerns about "exceeding" the findings expressed by the jury. The trial court seems to have been concerned that the kidnapping at issue was charged as one committed for the purpose of engaging in sexual activity with the victim against her will, and that defendant's other convictions were for rape, which are obviously crimes involving forced sexual activity. Based upon the fact that the kidnapping was a part of the rape and was used to facilitate the rape, the trial court seemed to believe it could not find there was a separate animus for the two offenses.

{¶ 37} However, using the factors set forth under *Logan*, we made exactly that type of separate animus finding in the *Vance* case. In *Vance*, we found that the kidnapping was appropriately charged as facilitating a robbery and that the analysis under R.C. 2941.25 was directed only to determining whether the two charges should merge for purposes of sentencing. "Applying the Supreme Court's analysis under *Johnson* and *Logan*, the kidnapping, although part of the aggravated robbery, involved substantial asportation and prolonged restraint, both of which support the trial court's determination that defendant had a separate animus for the kidnapping." *Vance* at ¶ 17. Although the *Vance* case involved an aggravated robbery, rather than a rape, the rationale behind our decision easily applies to the instant case. In our case, defendant failed to show the kidnapping was based on the same conduct and committed with the same animus as the rape counts.

{¶ 38} Although somewhat unclear, the trial court's analysis also seems to suggest a concern that a separate animus finding would have required the judge, as the sentencer, to consider facts which were not found by the jury. The trial court seemed to believe a separate animus determination would have been in violation of the *Apprendi v. New Jersey*, 530 U.S. 466 (2000) and *Blakely v. Washington*, 542 U.S. 296 (2004) line of cases, which prohibit the sentencer from considering facts that increase the maximum sentence for the offense. However, we find no support for this reasoning.

{¶ 39} Therefore, based upon the foregoing analysis, we find a separate animus existed for the kidnapping count under the facts and circumstances in this case and based upon defendant's conduct and the guidelines set forth in *Logan* for determining whether

a separate animus exists in the context of a kidnapping. Consequently, we find the trial court erred in merging the kidnapping offense with the rape offenses.

{¶ 40} Accordingly, we sustain the State's second assignment of error.

## V.  FIRST ASSIGNMENT OF ERROR—MANDATE ON REMAND

{¶ 41} Because we have sustained the State's second assignment of error, which requires that this matter be reversed and remanded for resentencing, the State's first assignment of error is rendered moot.

## VI.  DISPOSITION

{¶ 42} In conclusion, we sustain the State's second assignment of error. The State's first assignment of error is rendered moot. Therefore, we reverse and remand this matter for resentencing, with instructions to the trial court to conduct a de novo resentencing hearing.

*Judgment reversed;*
*cause remanded with instructions.*

KLATT and DORRIAN, JJ., concur.

————————————