[Cite as *State v. Parks*, 2019-Ohio-867.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106977**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**TROY PARKS**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-621460-A

**BEFORE:** Laster Mays, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** March 14, 2019

**ATTORNEY FOR APPELLANT**

Michael P. Maloney
24441 Detroit Road, Suite 200
Westlake, OH 44145


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Fallon Radigan
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Troy Parks ("Parks") appeals his convictions and asks this court to reverse.    After review of the record, we affirm.

{¶2} Parks was found guilty of two counts of rape, felonies of the first degree, in violation of R.C. 2907.02(A)(1)(B); three counts of gross sexual imposition, felonies of the third degree, in violation of R.C. 2907.05(A)(5); one count of kidnapping, a first-degree felony, in violation of R.C. 2905.01(A)(4); and two counts of endangering children, felonies of the second and third degrees, in violation of R.C. 2919.22.   The rape, kidnapping, and endangering children counts all contained a notice of prior conviction and a repeat violent offender specification.   After a bench trial, Parks was found guilty and sentenced to life in prison.

I.    Facts

{¶3} The victim, A.D., is the 12-year-old stepdaughter of Parks.   In September 2017,

Parks asked A.D. to come into the bedroom that he and A.D.'s mom, S.D., shared. A.D. testified that S.D. was asleep on one side of the bed. (Tr. 58.) A.D. stated that S.D. and Parks had been drinking alcohol. (Tr. 75.) A.D. testified that while S.D. was asleep in the bed, Parks and A.D. got into the same bed. Parks then asked A.D. to take off her clothes. (Tr. 57.) Parks began to fondle and lick her breasts. (Tr. 60.) A.D. testified that Parks touched her vagina with his fingers, licked her vagina, and then penetrated her vagina with his fingers. (Tr. 61.) Parks told A.D. to hold his penis. *Id*. Parks started rubbing A.D.'s vagina with his penis. *Id*. A.D. stated that the sexual activity stopped after S.D. woke up to find Parks on top of her. S.D. and Parks began fighting and S.D. stabbed Parks numerous times. Parks fled the home and S.D. called the police.

{¶4} Sergeant Jarod Schlacht ("Sgt. Schlacht"), from the Cleveland Police Department, was the first officer to respond to S.D.'s call. Sgt. Schlacht testified that upon arrival, Parks told Sgt. Schlacht that he was injured. (Tr. 410.) Sgt. Schlacht rendered first aid to Parks and called for an ambulance.

{¶5} After Parks arrived at the hospital, Detective Christina Cottom ("Det. Cottom") interviewed him. Det. Cottom presented Parks with a typed-out *Miranda* warnings that he signed. Det. Cottom recorded the interview on a voice recorder. At the trial, Det. Cottom testified as to what was contained on the recording.

> State: So on that recording you did explain to the defendant the waiver of his rights, and you do have two X's on this waiver, is that fair to say?
>
> Det. Cottom: Yes.
>
> State: And where did he sign that waiver?
>
> Det. Cottom: He signed on the upper-most one waiving his rights.

State:   So that's why you continued with your statement, is that fair to say?

Det. Cottom:   That's correct. When I was sitting with him — well, he was in bed and I was sitting.   I went you can either sign here (indicating) if you want to talk to me; and if you don't want to talk to me, you can sign there (indicating).   I wanted him to know what line was for what.

State:   Okay.   And he did, in fact, sign that he wanted to speak with you?

Det. Cottom:   Yes.

* * *

State:   What did the defendant say about the force?

Det. Cottom:   That it wasn't rape, because there was no force.

State:   How old is the victim?

Det. Cottom:   Twelve.

State:   Okay.   And what did the defendant say about digital penetration?

Det. Cottom:   He didn't deny it, and then he went on to say that [victim] stuck her own fingers in her vagina.

State:   And what did the defendant say about touching [victim's] breasts?

Det. Cottom:   That he touched her breasts.

State:   And he fondled them, correct?

Det. Cottom:   That he fondled them.

State:   And what did he say about his penis? What did he do with his penis with [victim]?

Det. Cottom:   That he rubbed it outside [victim's] vagina.

State:   And what did he say with regards to — I'm sorry, strike that.   He admitted to doing these things, correct?

Det. Cottom:   Yes, he did.

(Tr. 493-496.)

{¶6} During cross-examination, Det. Cottom was questioned regarding Parks asking for a lawyer before he signed the *Miranda* warning waiver. The state objected and defense asked the question again. The trial court sustained the objection stating "[t]hat's not relevant to cross right now. This isn't a suppression hearing." (Tr. 508.) Defense counsel questioned the relevancy of his questioning regarding Parks's request, and the trial court responded by stating, "It is not a suppression hearing. Whether he said he wanted a lawyer — there was no motion to suppress filed in this case." *Id.*

{¶7} At the end of the bench trial, the trial court found Parks guilty of all charges and sentenced him to life in prison. He filed this appeal and assigned two errors for our review:

> I. The trial court erred in denying appellant's Crim.R. 29 motion for acquittal when there was insufficient evidence to prove the elements of rape; and
>
> II. The trial court erred by not suppressing appellant's statement where it was taken without sufficient *Miranda* warnings.

## II. Motion for Acquittal

{¶8} In Parks's first assignment of error, he contends that there was insufficient evidence to prove the elements of rape, and thus, the trial court erred in denying his Crim.R. 29 motion for acquittal.

> A motion for acquittal under Crim.R. 29(A) tests the sufficiency of the evidence. *State v. Capp*, 8th Dist. Cuyahoga No. 102919, 2016-Ohio-295 ¶ 19. A trial court must issue a judgment of acquittal where the state's evidence is insufficient to sustain a conviction for an offense. *Id.* An appellate court is charged with reviewing a trial court's denial of a motion for acquittal by employing the same standard it applies when reviewing a sufficiency of the evidence claim. *Id.*
>
> When performing a sufficiency inquiry, we do not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial

supported the conviction. *Id*. at ¶ 20. We determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Id*.

*State v. Alexander*, 8th Dist. Cuyahoga No. 104281, 2017-Ohio-1445, ¶ 33-34.

{¶9} Parks was found guilty of first-degree rape in violation of R.C. 2907.02(A)(1)(b), which states,

> No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies: The other person is less than thirteen years of age, whether or not the offender knows the age of the other person.

{¶10} In addition,

> "[s]exual conduct" means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

R.C. 2907.01(A).

{¶11} Park argues that the evidence was insufficient to find him guilty of rape because there was no physical evidence of penetration. He contends that the nurse who examined the victim found no abrasions, bruises, fissures, or similar genital injuries. However, after being asked about not seeing genital injuries, the nurse testified that, "The tissue — the female tissue has estrogen on board. The tissue is made to stretch. Being touched or penetrated with a small object in a girl who has not had her period, but is of age to have started her period and has reached puberty, you are not going to see an injury." (Tr. 235.) However, "a physical injury is not a condition precedent to a conviction for rape; not all rape victims exhibit signs of physical injury." *State v. Leonard*, 8th Dist. Cuyahoga No. 98626, 2013-Ohio-1446, ¶ 46.

**{¶12}** The victim testified that Parks digitally penetrated her. The victim's testimony was as follows:

State: Okay. And when did he get naked?

Victim: After we were in the bed.

State: Okay. And were you under the covers or over the covers?

Victim: Over.

State: Okay. And you took your pants off?

Victim: Yes.

State: And you took your underwear off?

Victim: Yes.

State: Did you take your shirt off?

Victim: No.

State: So did you have your bra on?

Victim: Yes.

State: Okay. You sleep with your bra on?

Victim: Yes.

State: Okay. And did you take your clothes off before he started to touch you or after?

Victim: Before.

State: Okay. So where did he first touch you?

Victim: My chest.

State: Okay. And that's when you said he was licking your chest?

Victim: Yes.

State: Okay. And when did he start to move down your body?

Victim: Shortly after.

State: Okay. And then that's when you said he rubbed your vagina?

Victim: Yes.

State: And you said he penetrated you?

Victim: Yes.

State: And he penetrated you with what?

Victim: His finger.

(Tr. 106.)

{¶13} We find that the victim's testimony that Parks penetrated her with his fingers, "if believed, is sufficient to support each element of rape." (Citations omitted.) *State v. Dean*, 2018-Ohio-1740, 112 N.E.3d 32, ¶ 35 (6th Dist.).

> *See, e.g., State v Jackson*, 2015-Ohio-5490, 63 N.E.3d 410, ¶ 44 (2d Dist.)(victim's statement that defendant twice "'fingered her vagina on the inside' * * * met elements of engaging in sexual conduct"); *State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 36 (victim's testimony that defendant "put his fingers down in [her] vagina" was sufficient evidence of sexual conduct); *State v. Wright*, 6th Dist. Lucas No. L-12-1327, 2013-Ohio-5910, ¶ 13 (victim's statement that defendant touched her skin "and then he put his fingers up there" appeared "to mean insertion" for purposes of sexual conduct) (Emphasis sic.); *State v. Smith*, 10th Dist. Franklin No. 03AP-1157, 2004-Ohio-4786, ¶ 19 (testimony of digital penetration sufficient where victim "testified that defendant put his finger in her 'pee-pee'").

*State v. Remy*, 2d Dist. Clark No. 2017-CA-7, 2018-Ohio-2857, ¶ 155.

{¶14} Additionally, the SANE nurse testified that because of the victim's age and the penetration was done with a small object, injuries would not be seen. A victim's testimony concerning penetration need not be corroborated by the medical evidence. *See State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996 Ohio App. LEXIS 2245 at 6 (May 28, 1996) (even

without corroborating medical evidence, a victim's testimony that the perpetrator placed his penis in her vagina constitutes penetration). For these reasons, we find that the element of penetration is supported by legally sufficient evidence.

{¶15} Parks's first assignment of error is overruled.

### III. Suppression of Evidence

{¶16} In Parks's second assignment of error, he argues that the trial court erred by not suppressing his statements to Det. Cottom, because it was taken without sufficient *Miranda* warnings. More specifically, Parks states that he invoked his right to counsel while at the hospital but Det. Cottom continued talking with him. Parks allege that all questions from Det. Cottom should have ceased and therefore the trial court should have suppressed those statements.

{¶17} During cross-examination, defense counsel asked Det. Cottom "[a]nd didn't we hear on the video, ma'am, Troy Parks, before he signed this waiver ask for his lawyer? Didn't we hear that?" Det. Cottom responded "yes." (Tr. 507.) A review of the recording reveals that Parks stated that he wanted to talk to a lawyer to get the time line of the events correct. At that point, Det. Cottom ceased interviewing Parks, and began informing Parks of his rights. Parks then informed Det. Cottom that he has mood swings, is bipolar and could not read or write very well. Det. Cottom proceeded to read and explain Parks's rights to him. Det. Cottom informed Parks that he did not have to talk to her or answer any of her questions. Parks asked Det. Cottom if he could stop the interview at any time. She informed him that he could.

{¶18} Parks told Det. Cottom that he felt comfortable answering her questions, but he wanted to talk to a lawyer later to figure everything out. She asked him repeatedly if he wanted to talk to her or if he did not want to talk to her. Parks decided that he wanted to talk to Det. Cottom and signed the *Miranda* warning waiver. Since the Det. Cottom had given complete

*Miranda* warnings and obtained a written waiver before asking Parks any questions about the rape, Det. Cottom fully complied with the constitutional requirements. *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 68 N.E.3d 327, ¶ 34.

{¶19} The trial court listened to the recording and made the determination that the waiver was valid. It stated, "[t]he fact of the matter is there was no motion to suppress filed in this case. Even if there was, having heard that interview, I didn't hear anything that I would interpret as some type of trickery or coercion. I think he voluntarily waived his right to talk. I'm going to overrule the objection." (Tr. 527.) In order for a defendant's waiver of *Miranda* rights to be valid, the waiver must be knowingly, intelligently, and voluntarily made. *Miranda v. Arizona*, 384 U.S. 436, 479, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), *supra*, at 444. Absent a showing that the waiver was voluntary, the waiver is invalid and the defendant's statements should be suppressed. *Miranda*, *supra*. *State v. Kent*, 8th Dist. Cuyahoga No. 90795, 2009-Ohio-3889, ¶ 26.

{¶20} The record also reveals that Parks's trial counsel did not file a motion to suppress Parks's alleged illegally obtained statements to the detectives. "By failing to file a motion to suppress illegally obtained evidence, a defendant waives any objection to its admission. *State v. Campbell*, 69 Ohio St.3d 38, 44, 630 N.E.2d 339 (1994)." *State v. Osie*, 140 Ohio St.3d 131, 2014-Ohio-2966, 16 N.E.3d 588, ¶ 136.

{¶21} The trial court stated,

Let the record reflect also that you are very respected defense counsel and experienced. I have no doubt that if you thought that you had a substantive suppression motion, you would have asked for that on your client's behalf. I don't want anyone — if somebody should ever claim ineffective assistance of counsel, I don't want this part of the record to be used as that. I'm quite certain that had you felt that you had a substantive argument in that respect, you would have advanced it before trial.

(Tr. 527-528.)

**{¶22}** For these reasons, we find that the trial court did not err by not suppressing Parks's statements to Det. Cottom during the bench trial.

**{¶23}** Parks's second assignment of error is overruled.

**{¶24}** Judgment is affirmed.

It is ordered that the appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR